# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PETER SWORAK, dba CAMPER CARE, | ) | CASE NO. 5:18-cv-2185 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| GULF STREAM COACH, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of plaintiff Peter Sworak dba Camper Care ("Camper Care") to join a non-diverse defendant (along with two additional claims) and to remand due to the resulting loss of complete diversity. (Doc. No. 9 ["Mot."].) Defendant Gulf Stream Coach, Inc. ("Gulf Stream") has filed a memorandum in opposition (Doc. No. 13 ["Opp'n"]) and Camper Care has filed a reply (Doc. No. 14 ["Reply"]). For the reasons set forth herein, the motion is **granted**.

## I. BACKGROUND

Plaintiff Camper Care, a sole proprietorship recreational vehicle ("RV") dealer, filed a five-count complaint in the Common Pleas Court of Portage County, Ohio against Gulf Stream, an RV manufacturer, alleging violations of Chapter 4517 of the Ohio Revised Code and negligence. (*See* Doc. No. 1-1, Complaint ["Compl."] ¶ 5.)[1]

The claims in the complaint assert generally that, pursuant to a Manufacturer-Dealer Agreement ("the Agreement") between Camper Care and Gulf Stream, Camper Care became a dealer for Vintage Cruiser RVs manufactured by Gulf Stream. (*Id.* ¶ 7.) The Agreement allegedly

---

[1] Chapter 4517 allegedly provides a framework for licensing and regulating manufacturers, distributors, wholesalers, and dealers of motor vehicles, including mobile homes and RVs. (Compl. ¶ 15.)

contained no minimum stock quantity for Vintage Cruisers and, during the first year of the Agreement, Camper Care purchased two Vintage Cruisers – one that it sold and the other that it used as stock. (*Id.* ¶¶ 7, 8.) Camper Care always advertised and showed the Vintage Cruiser to prospective customers. (*Id.* ¶ 8.) On September 28, 2017, Gulf Stream advised Camper Care that it had allowed orders for six Vintage Cruisers to be placed by a competing RV dealer, Hartville RV Center, Inc. ("Hartville RV"), and that Gulf Stream would no longer do business with Camper Care because, for almost a year, it had sold only one Vintage Cruiser and stocked only one. (*Id.* ¶¶ 10, 11.) Hartville RV was thereafter listed on Gulf Stream's website as its area RV dealer. (*Id.* ¶ 11.) On October 16, 2017, after receiving notice from Gulf Stream of the termination of the Agreement, Camper Care filed a protest under Ohio Rev. Code § 4517.57(B). (*Id.* ¶¶ 12, 13.) On July 25, 2017, Camper Care withdrew its protest and subsequently pursued this lawsuit, which it filed in state court on August 17, 2018. (*Id.* ¶ 14.)

On September 24, 2018, Gulf Stream removed the action to this Court on the basis of diversity jurisdiction. On October 1, 2018, Gulf Stream filed a motion to dismiss or, in the alternative, to stay pending mediation and/or arbitration. (Doc. No. 5.)[2] Twenty-one days later, on October 22, 2018, Camper Care filed an amended complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B). The amended complaint added a non-diverse defendant, Hartville RV, and two additional state law claims (tortious interference with business relationship and civil conspiracy).

---

[2] Camper Care asserts that Ohio law includes an unequivocal prohibition against arbitration clauses in franchise agreements and that Gulf Stream is attempting to circumvent that prohibition by using the Federal Arbitration Act preemptively. Camper Care argues that, absent remand, if it is forced to arbitrate, it will suffer injury to its statutory rights as an Ohio motor vehicle dealer. (Mot. at 159.) (All page number references herein are to the page identification numbers generated by the Court's electronic docketing system.)

One week later, on October 29, 2018, apparently having second thoughts as to whether it could add a non-diverse defendant without prior leave of Court,[3] Camper Care filed the instant motion and the Court ordered briefing, which is now complete.

## II. DISCUSSION

**A.     Standard of Review**

Ordinarily amendments to pleadings are governed by the federal rule that allows a plaintiff to amend "once as a matter of course" within "21 days after service of a responsive pleading or … a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). But after a case has been removed to federal court, if an amendment would divest the court of jurisdiction, "the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). "The general impetus for applying § 1447(e) is for the trial court to use its discretion and determine if allowing joinder would be fair and equitable." *City of Cleveland v. Deutsche Bank Tr. Co.*, 571 F. Supp. 2d 807, 823 (N.D. Ohio 2008) (citations omitted).

The Sixth Circuit has offered little guidance on how to apply § 1447(e),[4] but district courts in the circuit generally consider the following factors: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be significantly prejudiced if amendment is not allowed; and (4) any other equitable factors." *Cooper v. Thames Healthcare Grp., LLC*, No. 13-14-GFVT,

---

[3] In recognition of the tension between Rule 15(a) and § 1447(e), this Court has joined other courts in adopting the general rule that leave of court should be sought before joining a non-diverse defendant. *Wallace v. Dolgen Midwest, LLC*, No. 5:12CV2945, 2014 WL 4338899, at *2 (N.D. Ohio Aug. 29, 2014).

[4] Inability to find relevant Sixth Circuit case law may be attributable to a combination of the discretion granted to the district court regarding amending coupled with the fact that an order remanding a removed case for lack of jurisdiction is not reviewable on appeal. *See* 28 U.S.C. § 1447(d) ("[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise [except in certain civil rights cases]").

3

2014 WL 941925, at *2 (E.D. Ky. Mar. 11, 2014). Some courts have found the first factor "often of paramount importance because the ultimate question is whether the primary purpose of the proposed joinder is to divest the federal forum of jurisdiction." *Brandenburg v. Stanton Health Facilities, L.P.*, No. 5:14-183-DCR, 2014 WL 4956282, at *2 (E.D. Ky. Oct. 2, 2014); *see also City of Cleveland*, 571 F. Supp. 2d at 824-25; *J.Lewis Cooper Co. v. Diageo N. Am., Inc.*, 370 F. Supp. 2d 613, 618 (E.D. Mich. 2005).[5]

**B.    Analysis**

In its motion, Camper Care asserts that the two additional claims and the additional defendant "increase[] the available damages for Camper Care against Defendants who conspired to violate Ohio law." (Mot. at 157.) It argues that, if the Court finds that Gulf Stream did not violate Ohio statutory law, the new legal theories will provide an alternative source of relief. Camper Care also claims it did not originally include Hartville RV because of a long-standing business relationship between the principals of the two entities, which Sworak did not want to jeopardize, but which has since deteriorated for reasons that now affect the underlying facts of this case. (*Id.* at 158.)

Gulf Stream argues that Camper Care was aware of facts underlying its new claims against Hartville RV before filing this lawsuit, but made a strategic decision not to pursue the claims. (Opp'n at 169.) It asserts that the amendment is designed solely to defeat diversity jurisdiction and should not be permitted. (*Id.* at 173, citing *City of Cleveland*, 571 F. Supp. 2d at 824 (denying joinder where the party seeking leave to amend "candidly admits that the motion's aim is to defeat

---

[5] "[I]t is [also] well settled law that the district court may deny a motion to amend if the court concludes that the pleading as amended could not withstand a motion to dismiss." *Martin v. Assoc. Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (citation omitted). That need not be considered because Gulf Stream has made no such argument and its motion to dismiss the original complaint is inapplicable.

4

diversity jurisdiction" ).) Gulf Stream also accuses Camper Care of being dilatory by waiting until now to seek to add Hartville RV.

In reply, Camper Care asserts that both new claims (tortious interference and civil conspiracy) have a *scienter* requirement for which it had no firm knowledge of any underlying facts until recently, after the filing of the complaint. (Reply at 213.) In particular, Camper Care alleges that, after the lawsuit was initiated, it learned that defendants "colluded for their benefit to strip Camper Care of its contractual rights to sell Vintage Cruisers in violation of Ohio law." (Mot. at 157.)

In an affidavit accompanying the reply brief, plaintiff Peter Sworak, the owner-operator of Camper Care, attests that he and Bob Pastore, the part owner and manager of Hartville RV, served together for years on the Great Lakes Recreational Vehicle Association ("GLRVA") Board. Pastore also served as the president of the Board. (Doc. No. 14-1, Sworak Aff. ¶¶ 1-4.) In a Board conference call on November 2, 2017, Sworak had discussed the actions of Hartville RV with respect to its order on September 28, 2017 of six Vintage Cruiser RVs from Gulf Stream. Notably, at that time, Pastore claimed he did not know that Camper Care was a Vintage Cruiser dealer when the Vintage Cruiser orders were placed by Hartville RV. (*Id.* ¶ 5.) Then, in August 2018, Pastore suggested to Sworak that he voluntarily resign from the GLRVA Board, but Sworak refused. (*Id.* ¶ 6.) On September 28, 2018, Sworak received a certified letter from Bob Pastore stating that the GLRVA Board planned to vote on October 30, 2018 to remove Sworak from the Board. Although Sworak's removal from the Board was allegedly for cause, no cause was ever identified, despite Sworak's requests to be informed of the cause. (*Id.* ¶¶ 7-11.) Sworak now believes that "Pastore orchestrated the decision by the GLRVA [B]oard to remove [him] without cause by making defamatory statements against [him] to fellow board members and using his position of power to

5

create a rigged removal process." (*Id*. ¶ 12.) Camper Care asserts that it was only through Sworak's removal from the GLRVA Board that it learned of Pastore's malicious intent toward Camper Care and, therefore, only then that it had the underlying facts to support the *scienter* element of its new claims. (Reply at 214.) Shortly thereafter, Camper Care sought leave to amend.[6]

The Court, in its discretion, does not conclude that the "*primary* purpose of the proposed joinder is to oust the case from the federal forum." *J. Lewis Cooper Co.*, 370 F. Supp. 2d at 618 (emphasis added). Rather, Camper Care belatedly discovered facts that arguably support actions against Hartville RV and was not dilatory in promptly seeking to amend to join this non-diverse party. This weighs in favor of granting the motion and remanding. *See, e.g., Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) ("[I]f there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the joinder is not fraudulent and the action must be remanded to state court.).

Although Gulf Stream suggests that non-joinder will not prejudice Camper Care because all available relief can be sought against Gulf Stream alone, without need to join Hartville RV or to add new claims, that is only true if Gulf Stream is found liable on the claims under Ohio Rev. Code Chapter 4517. The new claims are an alternative source for relief. Without them, Camper Care might be prejudiced. Although, arguably, Camper Care could bring a separate action against Hartville RV to raise these claims, the Court concludes it is more efficient to handle all claims and parties in one lawsuit, especially where, as here, the case is barely three months old, discovery has

---

[6] Sworak points out that, although he was put on notice of Pastore's malicious intent on August 28, 2018 when Pastore suggested Sworak resign from the GLRVA Board, the amended complaint was filed a little over two weeks after Pastore, in a October 4, 2018 letter, refused to provide specifics as to the alleged "cause" for Sworak's anticipated removal from the Board and more than a week before the Board actually moved to removed him. (Reply at 215.) In Sworak's view, he was highly non-dilatory by moving quickly after he first perceived Pastore's intentions.

6

not commenced, and no Case Management Plan has issued. *See Jones v. Woodmen Acc. & Life Co.*, 112 F. Supp. 2d 676, 680-81 (N.D. Ohio 2000) (allowing joinder where "defendants have invested little time, energy and resources in federal court, meaning that if the case were remanded to state court the resultant delay and waste would be negligible").

### III. CONCLUSION

For the reasons set forth herein, plaintiff's motion for leave to add a non-diverse party and two additional claims (Doc. No. 9) is **granted** and this case, as amended, will be remanded to the Court of Common Pleas of Portage County, Ohio.

**IT IS SO ORDERED**.

Dated: November 30, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**